■ RMS Partners Tivoli Company et al., Respondents-Appellants, v Walter F. Uccellini, Appellant-Respondent. [671 NYS2d 853] —Peters, J. Cross appeals from an order of the Supreme Court (Ceresia, Jr., J.), entered July 22, 1997 in Rens-

selaer County, which, *inter alia*, denied defendant's motion for summary judgment dismissing the complaint.

Defendant, as president of United Investors Realty Corporation (hereinafter UIRC), entered into separate contracts with each of the three plaintiffs for the purchase of three parcels of commercial realty in Florida. While the original contracts required that the transaction close by December 31, 1993, that date was postponed and new contracts (hereinafter the restated contracts), wholly superseding the original contracts, were executed on January 13, 1994.

The language of the restated contracts reflects defendant's intention to attempt to finance the purchase of these properties through the creation of a real estate investment trust (hereinafter REIT). This intention was evidenced by the restated contracts' provision which required that defendant file a registration statement (Form S-11) with the Securities and Exchange Commission (hereinafter SEC) on or before February 11, 1994. In the event that such form was not filed by that date, section 3.5 of the restated contracts provided for liquidated damages: "[S]eller may at its option terminate this Contract, in which event Seller may retain as liquidated and agreed upon damages for the cancellation of this Contract and two other contracts of even date herewith between Purchaser and affiliates of Seller, the aggregate sum of $500,000, provided however that if Purchaser shall file its Form S-11 within 30 days of February 11, 1994, then Seller shall promptly refund to Purchaser $250,000 of such amount." In addition thereto, section 3.1 (c) required that a promissory note be delivered to the seller, along with a mortgage in the principal amount of $500,000, to be held by the seller in lieu of a deposit, which shall remain unrecorded until the earlier of either the closing, "in which case the deposit will be returned", or "May 31, 1994"—the newly extended "outside date" for the closing. If the purchaser failed to close on or before such date or after an agreed-upon extension pursuant to the terms of the contracts: "then payment under the note may be demanded and the mortgage may be recorded by Seller, it being intended that the foregoing deposit shall be held and retained by Seller as liquidated and agreed upon damages for this Contract and any damages under two other contracts between Purchaser and affiliates of Seller dated on even date herewith."

On March 21, 1994, by addendum No. 1, section 3.5 of the restated contracts was deleted and substituted by language allowing the seller "at its option" to terminate the contracts in the event that the purchaser did not file the requisite registra-

tion statement with the SEC on or before March 31, 1994. If the seller did choose to terminate, it was given the right to "retain as liquidated and agreed upon damages for the cancellation of this Contract and two other Contracts of even date herewith between the Purchaser and affiliates of Seller, the aggregate sum of $500,000". Hence, the change between section 3.5 in the restated contracts and the newly substituted section 3.5 by addendum No. 1 was the change in the date by which the registration statement had to be filed with the SEC and the deletion of that portion of section 3.5 that allowed the purchaser to be refunded $250,000 out of the $500,000 liquidated damages should it file the registration statement within 30 days of the March 31, 1994 deadline.

Defendant filed Form S-11 on March 31, 1994 as it was required to do by section 3.5 of addendum No. 1. However, on May 16, 1994, addendum No. 2 to the restated contracts of sale was executed. Therein, the parties again extended the "outside date" for the closing on these properties, this time from May 31, 1994 to June 30, 1994. By yet another modification and amendment to the restated contracts, as amended by addendum Nos. 1 and 2, this agreement, dated June 29, 1994, changed, *inter alia*, the outside date to August 15, 1994. It specifically stated that "[e]xcept as modified by this [m]odification and [a]mendment of [c]ontract, the [restated] Contract is hereby ratified and confirmed in all respects". On that same date, plaintiff RMS Partners Jacaranda sent a confirmatory letter regarding this agreement which stated the following:

"This will confirm * * * that you have agreed that we have the right to cancel and terminate the contracts which are being extended on June 29, 1994 until August 15, 1994 on condition that the undersigned have the right to terminate each of the above three contracts on August 1, 1994 at 5:00 PM if an amended S11, incorporating our properties, has not been refiled with the SEC and we shall have the further right to terminate the contracts on August 8, 1994 if by 8:00 PM on August 8, 1994 the Epoch REIT has not been 'priced' by Merrill Lynch."

Hence, when UIRC failed to file the amended Form S-11 with the SEC by August 1, 1994, plaintiffs terminated the contracts by letter dated August 2, 1994 "[i]n accordance with the terms of that certain Letter Agreement dated June 29, 1994". Plaintiffs further asserted their right to liquidated and agreed-upon damages in the aggregate amount of $500,000 in accordance with section 3.5 of such contracts.

Plaintiffs thereafter commenced this action to recover liqui-

dated damages, prompting defendant to move for summary judgment. Defendant contended that while the letter agreement allowed plaintiffs to terminate the contracts, it did not entitle them, pursuant to its terms, to collect liquidated damages. After plaintiffs cross-moved for summary judgment, Supreme Court denied both motions, finding the existence of a material issue of fact. Both parties appeal.

Notwithstanding their agreement to be governed by Florida law,* all procedural issues, including whether defendant has proffered sufficient proof to warrant judgment as a matter of law, will be determined in accordance with our well-established principles (see, Zuckerman v City of New York, 49 NY2d 557). Within these parameters, it is axiomatic that "[s]ummary judgment is a drastic remedy and 'should not be granted where there is any doubt as to the existence of a triable issue' * * *. [T]he focus * * * must be on issue identification rather than issue determination" (Sternbach v Cornell Univ., 162 AD2d 922, 923, quoting Moskowitz v Garlock, 23 AD2d 943, 944 [citations omitted]).

Defendant contends that unlike section 3.1 (c) of the restated contracts (which provided for liquidated damages in the event that there was a failure to close on or before the "outside date" as extended by the various addenda) or section 3.5 (which similarly provided for the imposition of liquidated damages in the event that the Form S-11 was not filed with the SEC on or before a specified date), the June 29, 1994 letter agreement, the last contract between these parties, neither incorporated these sections nor provided for liquidated damages. By its terms, termination of these contracts were permitted only if an amended Form S-11 had not been refiled with the SEC by August 1, 1994 at 5:00 P.M. or if the Epoch REIT had not been "priced" by Merrill Lynch by August 8, 1994 at 8:00 P.M. Never disputing plaintiffs' right to have terminated the contract, defendant contends that by the terms of these contracts, there exists no basis for the assessment of liquidated damages.

In response thereto, plaintiffs proffered the affidavit of Stanley Katz, the managing partner of plaintiffs and the person who negotiated the various provisions and modifications of these contracts. Katz explained the purpose behind the extensions of the closing date, how the note and mortgage were delivered in lieu of a deposit, and how such note and mortgage

---

* Since there remains no showing that to construe this contract in accordance with the laws of Florida would violate this State's public policy (see, Fox v Ashland Oil, 134 AD2d 850; Culbert v Rols Capital Co., 184 AD2d 612), we will so honor the parties' intent as expressed in the contract.

were intended to be a source for liquidated damages if defendant failed to close or make the requisite SEC filing. It was his understanding that defendant's company was purchasing such properties so they could be part of the REIT and that "[t]he funds to pay for the[ir] purchase price * * * [were] to come substantially from a public offering of interests in the REIT". Consequently, it was his belief that the public offering had to be completed before there could be a closing on these properties and that certain filings had to be made with the SEC before the offering could go forward. As to the extension of the "outside date" to August 15, 1994 through the modification and amendment to the restated contracts dated June 29, 1994, which expressly "ratified and confirmed" the prior contract in all relevant respects not previously modified, Katz explained that before plaintiffs had returned executed versions of such agreement defendant was asked to sign the June 29, 1994 letter, which specified his understanding of the conditions under which the extensions permitted by such modification and amendment of the same date were being offered. Katz therein included an additional event which would trigger plaintiffs' right to terminate and collect liquidated damages: the failure of defendant's company to file an amended Form S-11 with the SEC by August 1, 1994 at 5:00 P.M. Thus, Katz contends that when such letter is read in conjunction with the prior agreements still in effect, it becomes clear that the parties' intentions were never to abandon the right to liquidated damages, only to extend the time when both the closing and the requisite filings with the SEC were to occur.

Upon such showing, we find that "it is the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light on the question, and the surrounding circumstances at the time the agreement was entered into" (*J & S Coin Operated Machs. v Gottlieb*, 362 So 2d 38, 39 [Fla]). Upon such review, we conclude that Supreme Court properly denied defendant's motion for summary judgment since each and every amendment and ratification of the remaining portions of the restated contracts arguably contemplated a liquidated damages provision should the requisite filings not be made by a scheduled date. In finding that the letter agreement of June 29, 1994 arguably continues to reflect such intention, a summary determination on this record in favor of either party would have been improper.

As to plaintiffs' cross motion, we find a failure to proffer sufficient proof to demonstrate, as a matter of law, that defendant's

conduct constituted an anticipatory breach of contract (*see, National Educ. Ctrs. v Kirkland*, 635 So 2d 33 [Fla]; *Mori v Matsushita Elec. Corp.*, 380 So 2d 461, *cert denied* 389 So 2d 1112 [Fla]). Plaintiffs having failed to sustain their burden, we need not address the sufficiency of defendant's proof in response thereto (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324). Accordingly, Supreme Court's order is affirmed.

Mikoll, J. P., Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.